UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| The Johns Hopkins Health System Corporation; The Johns Hopkins Home Care Group, Inc.; Johns Hopkins Surgery Centers Series; Johns Hopkins Imaging, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> Claritev Corporation; MultiPlan, Inc.; Aetna, Inc.; Blue Shield of California Life & Health Insurance Company; Blue Cross Blue Shield of Michigan Mutual Insurance Company; Aware Integrated, Inc. and BCBSM, Inc.; Cambia Health Solutions, Inc.; Centene Corporation; The Cigna Group; Elevance Health, Inc.; Health Care Service Corporation; Highmark Health; Horizon Healthcare Services, Inc.; Humana Inc.; Kaiser Foundation Health Plan, Inc.; UnitedHealth Group Inc.; Allied National, LLC; Benefit Plans Administrators of Eau Claire, LLC; Central States Southeast and Southwest Areas Health and Welfare Fund; Consociate, Inc.; Healthcare Highways Health Plan (ASO), LLC; Secure Health Plans of Georgia, LLC; Sanford Health Plan; Blue Cross Blue Shield of Massachusetts; and Health Net of California, Inc., <br><br> Defendants. | Case No. 1:25-cv-9075 <br><br> MDL No. 3121 <br><br> **SECOND AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**DIRECT ACTION PLAINTIFFS' SECOND AMENDED SHORT-FORM COMPLAINT**

The Plaintiffs named below file this Short-Form Complaint and (if checked off below) Demand for Jury Trial against the Defendants named below by and through the undersigned counsel. Plaintiffs incorporate by reference the factual allegations, as well as the claims and relief checked off below, sought in the Consolidated Master Direct Action Plaintiff Complaint

1

("Consolidated Master DAP Complaint") as it relates to the named Defendant(s) (checked-off below), filed in *In re Multiplan Health Insurance Provider Litigation*, MDL No. 3121, in the United States District Court for the Northern District of Illinois. Plaintiff files this Short-Form Complaint pursuant to Case Management Order No. 6, filed on the MDL Docket (No. 1:24-cv-06795) at ECF 179.

Plaintiffs indicate by checking the relevant boxes below the Parties, Designated Forum, Jurisdiction and Venue, Causes of Actions and other Relevant Information specific to Plaintiffs' case. Plaintiffs, by and through the undersigned counsel, allege as follows:

## I.    IDENTIFICATION OF PARTIES

1. **PLAINTIFFS**

2. Name of the Plaintiff alleging claims against Defendant(s): **Johns Hopkins Health System Corporation; The Johns Hopkins Home Care Group, Inc.; Johns Hopkins Surgery Centers Series; Johns Hopkins Imaging, LLC (collectively, "Johns Hopkins")**

3. For each Plaintiff that is a corporation, list the state of incorporation and state of principal place of business. For each Plaintiff that is an LLC or partnership, list the state citizenship of each of its members. For each Plaintiff that is a natural person, list the state of residency and citizenship at the time of the filing of this Short-Form Complaint [Indicate State[s]]:

   **Maryland**

4. **DEFENDANT(S)**

5. Plaintiff names the following Defendant(s)[1] in this action [*Check all that apply*]:

---

[1] Each Defendant named in this Short-Form Complaint acted directly or through each of that entity's executives, employees, directors, and majority-owned subsidiaries. For example, UnitedHealth Group Inc. acted directly or through, among others, the following majority-owned subsidiaries: United Healthcare Insurance Company, and its affiliates; United Healthcare Services Inc.; United Healthcare Service LLC; Oxford Benefit Management, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; Sierra Health-Care Options, Inc.; Health Plan of Nevada, Inc.; and United Healthcare of Florida, Inc.

| X | Claritev Corporation; MultiPlan, Inc.[2] |
|---|---|
| X | Aetna, Inc., a subsidiary of CVS Health Corporation |
| X | Blue Shield of California Life & Health Insurance Company |
| X | Blue Cross Blue Shield of Michigan Mutual Insurance Company |
| X | Aware Integrated, Inc. and BCBSM, Inc. d/b/a Blue Cross Blue Shield Of Minnesota |
| X | Cambia Health Solutions, Inc. f/k/a The Regence Group |
| X | Centene Corporation |
| X | The Cigna Group |
| X | Elevance Health, Inc. f/k/a Anthem, Inc. |
| X | Health Care Service Corporation |
| X | Highmark Health |
| X | Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey |
| X | Humana Inc. |
| X | Kaiser Foundation Health Plan, Inc. |
|   | Molina Healthcare, Inc. |
| X | UnitedHealth Group Inc. |
| X | Allied National, LLC |
| X | Benefit Plans Administrators of Eau Claire, LLC |
| X | Central States Southeast and Southwest Areas Health and Welfare Fund |
| X | Consociate, Inc. d/b/a Consociate Health |
| X | Healthcare Highways Health Plan (ASO), LLC |
| X | Secure Health Plans Of Georgia, LLC d/b/a Secure Health |
| X | Sanford Health Plan |
|   | CareFirst Of Maryland |
| X | Blue Cross Blue Shield of Massachusetts |

---

[2] Since the format of this short-form complaint was adopted by the Court, MultiPlan, Inc. has conceded that it is subject to government investigations; replaced its CEO, COO, CFO, and general counsel; and changed its name to "Claritev."

6. **OTHER DEFENDANTS**

7. For each "Other Defendant" Plaintiff contends are additional parties and are liable or responsible for Plaintiff's damages alleged herein, Plaintiff must identify by name each Defendant and its citizenship, and Plaintiff must plead the specific facts supporting any claim against each "Other Defendant" in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this Short-Form Complaint.

|   | NAME | CITIZENSHIP |
|---|------|-------------|
| 1 | Health Net of California, Inc. | California |
| 2 |      |             |
| 3 |      |             |

## II. DESIGNATED FORUM

8. For Direct Filed Cases: Identify the Federal District Court in which the Plaintiff would have filed in the absence of direct filing: **Northern District of Illinois**

9. For Transferred Cases: Identify the Federal District Court in which the Plaintiff originally filed and the date of filing: **Not Applicable**

## III. JURISDICTION AND VENUE

10. Subject Matter Jurisdiction is based on:

  ☐  Diversity of Citizenship
  ☒  Federal Question
  ☐  Other (The basis of any additional grounds for jurisdiction must be pled in sufficient detail as required by the applicable Federal Rules of Civil Procedure):

  _____
  _____

## IV. FACTS AND INJURIES ASSERTED

4

11. Plaintiff adopts all paragraphs of the Consolidated Master DAP Complaint by reference, except for the allegations set forth in any cause of action that Plaintiff does not adopt (as indicated below). **Johns Hopkins adopts all factual allegations in the Consolidated Master DAP Complaint.**

12. Plaintiff adopts and alleges as injuries resulting from the challenged conduct the injuries to DAPs set forth in the Consolidated Master DAP Complaint.

## V.  ADDITIONAL FACTS DEMONSTRATING STANDING TO BRING CAUSES OF ACTION

13. Plaintiff alleges the following additional facts in support of its standing to bring causes of action:

**See attached paragraphs of specific allegations.**

## VI.  CAUSES OF ACTION ASSERTED

14. Plaintiff adopts and asserts the following Causes of Action alleged in the Consolidated Master DAP Complaint, and the allegations with regard thereto, against the Defendants identified above (*check all that are adopted*).

| Check all that apply | Count | Cause of Action | Law pursuant to which the cause of action is asserted in the Master Complaint |
|---|---|---|---|
| ☐ | I | Horizontal Agreements in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | II | Hub-And-Spoke Agreement in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | III | Principal-Agent Combinations in Restraint of Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | IV | Agreements to Unreasonably Restrain Trade (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |
| ☒ | V | Anticompetitive Information Exchange (Section 1 of the Sherman Act, 15 U.S.C. § 1) | Federal Law |

| Check all that apply | Count | Cause of Action | Law pursuant to which the cause of action is asserted in the Master Complaint |
|---|---|---|---|
| ☒ | VI | Violation of State and D.C. Antitrust Statutes | All state law causes of action alleged in DAP Master Complaint, which are alleged in the alternative to Counts II-V |
| ☒ | VII | Violation of State Consumer Protection Laws | All state law causes of action alleged in DAP Master Complaint, which are alleged in the alternative to Counts II-V |
| ☐ | VII | Unjust Enrichment | |

## NOTE

If Plaintiff wants to allege additional Causes of Action other than those selected in the preceding paragraph, which are the Causes of Action set forth in the Master Complaint, the facts supporting those additional Causes of Action, must be pled in a manner complying with the requirements of the Federal Rules of Civil Procedure. In doing so, Plaintiff may attach additional pages to this Short-Form Complaint.

## VII.   ADDITIONAL CAUSES OF ACTION

15. Plaintiff asserts the following additional Causes of Action and supporting allegations against the following Defendants:

**See attached paragraphs of specific allegations.** _____

_____

_____

_____

## VIII.   PRAYER FOR RELIEF

16. *Check all that apply*:

[X]       **WHEREFORE,** Plaintiff prays for all available compensatory damages, treble damages, punitive damages in amounts to be proven at trial, and judgment against Defendant(s) and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiff may be entitled, including disgorgement.

[X]       **WHEREFORE,** Plaintiff prays for declaratory and injunctive relief and judgment against Defendant(s) and all such further relief that this Court deems equitable and just as set forth in the Master Complaint, and any additional relief to which Plaintiff may be entitled.

## JURY DEMAND

[*Check the applicable box*]:

[X]       Plaintiff hereby demands a trial by jury as to all claims in this action.

[ ]       Plaintiff **does not demand** a trial by jury as to all claims in this action.

****

By signature below, Plaintiff's counsel hereby confirms their submission to the authority and jurisdiction of the United States District Court of the Northern District of Illinois and oversight of counsel's duties under Federal Rule of Civil Procedure 11, including enforcement as necessary through sanctions and/or revocation of *pro hac vice* status.

Dated: October 7, 2025

/s/ Stephen M. Medlock
Stephen M. Medlock
Stephen Cohen
Rami Abdallah E. Rashmawi
**VINSON & ELKINS LLP**
2200 Pennsylvania Ave., N.W.
Suite 500 West
Washington, DC 20037
Tel: (202) 639-6500
Fax: (202) 639-6604
smedlock@velaw.com
scohen@velaw.com
rrashmawi@velaw.com

Michael Scarborough
Dylan Ballard
Madison Lo
555 Mission Street
Suite 2000
San Francisco, CA 94105
Tel: (415) 979-6900
Fax: (415) 651-8786
mscarborough@velaw.com
dballard@velaw.com
mlo@velaw.com

Mackenzie Newman
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 237-0000
Fax: (212) 237-0100
mnewman@velaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on October 7, 2025, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

/s/ Stephen M. Medlock
Stephen M. Medlock

## **ADDITIONAL FACTUAL ALLEGATIONS**

1.      Johns Hopkins is a world-renowned, not-for-profit health system headquartered in Baltimore, Maryland. Johns Hopkins and its subsidiaries have locations throughout Maryland, the District of Columbia, Florida, and Virginia, and they are on the front lines of medical innovation, teaching, and treatment. Johns Hopkins and its subsidiaries include several hospitals, ambulatory surgery centers, physician groups, and home care businesses.

2.      Certain wholly-owned subsidiaries of The Johns Hopkins Health System Corporation operate four hospitals located in Maryland and two located outside of Maryland. The four Maryland hospitals are:

a.      The Johns Hopkins Hospital, a world-renowned academic medical center that provides a comprehensive range of state-of-the-art medical care and that is consistently recognized as one of the best hospitals in the world;

b.      Johns Hopkins Bayview Medical Center, Inc., a not-for-profit corporation that operates a community-based teaching hospital offering a broad range of inpatient and outpatient services;

c.      Howard County General Hospital, Inc. (d/b/a Johns Hopkins Howard County Medical Center), a not-for-profit, community-oriented medical center offering a full range of acute care inpatient services as well as extensive outpatient services; and

d.      Suburban Hospital, Inc., a community-based, not-for-profit hospital serving Montgomery County, Maryland and the surrounding region as a designated regional trauma center and a health care facility offering a wide range of inpatient and outpatient services.

3.      Outside of Maryland, certain wholly-owned subsidiaries of The Johns Hopkins Health System Corporation operate two hospitals:

   a. The Lucy Webb Hayes National Training School for Deaconesses and Missionaries (d/b/a Sibley Memorial Hospital) ("Sibley Memorial Hospital"), a not-for-profit, full-service community hospital in Washington, D.C. that offers surgical, obstetric, psychiatric, oncologic, and skilled nursing services, as well as a 24-hour state-of-the-art emergency department; and

   b. Johns Hopkins All Children's Hospital, Inc. ("Johns Hopkins All Children's Hospital"), based in St. Petersburg, Florida, which includes a teaching hospital and regional affiliations and collaborations that make it possible to provide expert pediatric care for infants, children, and teens with some of the most challenging medical problems.

  4. Johns Hopkins was harmed by the MultiPlan Cartel, because it submitted claims for out-of-network care that were underpaid by members of the MultiPlan Cartel.

  5. The unique nature of Johns Hopkins' geographic footprint demonstrates the effects and harms caused by the MultiPlan Cartel. Hospitals in Maryland are subject to a unique all-payor rate setting system. In this system, a single independent state agency, the Health Services Cost Review Commission ("HSCRC"), establishes uniform rates for hospital services that are applicable to all major payors, including Medicare, Medicaid, and commercial third-party payors. Because of this unique regulatory structure, the MultiPlan Cartel cannot influence Maryland hospital charges. For Johns Hopkins' Maryland hospitals, the difference between their billed charges and allowed amounts for out-of-network goods and services is approximately 10%. For Johns Hopkins' non-Maryland hospitals, the difference between billed charges and allowed amounts is in excess of 60%. This real-world comparison between parts of a hospital system in a state where the MultiPlan Cartel cannot influence hospital charges and jurisdictions where the

Cartel operates freely shows the massive underpayments for out-of-network services generated by the Cartel.

6.      Due to the HSCRC, Johns Hopkins is not seeking damages or asserting a claim with respect to the out-of-network charges for its four Maryland hospitals. Johns Hopkins brings a claim based on the underpayments for out-of-network goods and services at Johns Hopkins All Children's Hospital, Sibley Memorial Hospital, and Johns Hopkins' non-hospital subsidiary operations.

7.      In some cases, Johns Hopkins has in-network contracts with some of the third-party payment plans offered by Aetna, Cigna, Humana, and other Defendants named in this Complaint. However, while Johns Hopkins is in-network with several health plans, it is not in-network with all of those payors' health plans. For example, Johns Hopkins may be in-network with most of a payor's PPO plans, but not certain large employer PPO plans or Affordable Care Act individual marketplace plans. Johns Hopkins is not asserting a cause of action or seeking any relief with respect to those in-network charges. Instead, Johns Hopkins is asserting causes of action only as to purely non-contract charges submitted to members of the MultiPlan Cartel that were repriced pursuant to the cartel agreement described in the Consolidated Master DAP Complaint.

8.      Moreover, no mandatory arbitration clause applies to Johns Hopkins' claims.

9.      Johns Hopkins Health System Corporation has an in-network agreement with Highmark. That contract does not require Johns Hopkins Health System Corporation to arbitrate claims against Highmark. Moreover, the dispute resolution provision in that contract applies only to in-network claims, and not the out-of-network claims.

10.      The Johns Hopkins Home Care Group, Inc. has in-network agreements with Aetna and Kaiser. Those agreements do not contain mandatory arbitration clauses. Moreover, the dispute

resolution provisions in those agreements only apply to disputes over in-network services, not out-of-network services.

11.     Johns Hopkins Surgery Centers Series has in-network agreements with Aetna, Cigna, and Humana. None of these agreements contain mandatory arbitration clauses that apply to this litigation. The agreements with Aetna and Humana do not contain mandatory arbitration clauses. Johns Hopkins Surgery Centers Series' in-network agreement with Cigna states only that "the parties must resolve disputes arising with respect to the performance or interpretation of the agreement" through an informal dispute resolution process. The Cigna in-network agreement applies only to in-network services, not out-of-network services.

12.     Sibley Memorial Hospital has in-network agreements with Aetna, Cigna, Humana, and Kaiser. The Aetna and Cigna agreements do not contain mandatory arbitration provisions that apply to this litigation. The Aetna agreement does not contain a mandatory arbitration clause. The Cigna in-network agreement states only that "the parties must resolve disputes arising with respect to the performance or interpretation of the agreement" through an informal dispute resolution process. The Cigna in-network agreement applies only to in-network services, not out-of-network services.

13.     Johns Hopkins All Children's Hospital has in-network agreements with Aetna, Cigna, Humana, and United. The Aetna, Cigna, and Humana agreements do not contain mandatory arbitration provisions that apply to this litigation. The Humana agreement does not contain a mandatory arbitration clause. The Aetna in-network agreement applies only to "disputes regarding the parties' obligations under [this] agreement"—i.e., to in-network services, not to out-of-network services. The Cigna in-network agreement states only that "the parties must resolve disputes arising with respect to the performance or interpretation of the agreement" through an informal

13

dispute resolution process. Therefore, the Cigna in-network agreement applies only to in-network services, not out-of-network services.

14.     No Defendant has an in-network agreement with Johns Hopkins Imaging, LLC.

15.     The Johns Hopkins Home Care Group, Inc.; Johns Hopkins Surgery Centers Series; and Sibley Memorial Hospital previously had in-network agreements with United. However, United has declined to renew its in-network agreements with these entities. Accordingly, as of August 25, 2025, Johns Hopkins is now entirely out-of-network with United, with the exception of Johns Hopkins All Children's Hospital.

16.     In some cases, Johns Hopkins' in-network contracts require Johns Hopkins' subsidiaries to take certain informal steps to resolve disputes. However, those informal dispute resolution requirements apply only to purchases of in-network services, not purchases of out-of-network services.

**Centene Corporation Was An Active Participant In The MultiPlan Cartel**

17.     Defendant Centene Corporation owns 100% of the ownership interests in Health Net, LLC ("Health Net"). Health Net, LLC is the sole owner of Defendant Health Net of California, Inc. ("Health Net of California"); Health Net Life Insurance Company; and Health Net Community Solutions, Inc.

18.     Centene announced its acquisition of Health Net in 2015 for approximately $6.8 billion. Centene completed its acquisition of Health Net in March 2016 after regulatory approvals.

19.     Since acquiring Health Net, Centene and Health Net have begun selling individual marketplace plans under the Ambetter, Wellcare, and Health Net brands.

20.     Since acquiring Health Net, Centene has been directly involved in Health Net's participation in the MultiPlan Cartel. Jeanell Austin, the Vice President of Contracting at Centene,

attended MultiPlan's 2018 Client Advisory Board Meeting, which took place from September 16-19, 2018 at the Montague Laguna Beach Resort in Laguna Beach, California. That meeting included 130 attendees from over 84 different competing out-of-network payors. During that meeting, MultiPlan speakers ensured that the participants were aligned on the same goal, they told the participants that what MultiPlan did for the industry was offering comprehensive medical spending reduction through reduced out-of-network payments.

21.     The 2018 Client Advisory Board Meeting also featured numerous opportunities for Centene to conspire with other payors, including at social events such as cocktail hours, a closing dinner emceed by MultiPlan CEO Dale White, and social outings such as golf and guided hikes. Among other competitors, executives from Aetna, Allied Benefit Systems, Blue Cross Blue Shield of Michigan, Blue Cross Blue Shield of Minnesota, BPA, Cigna, Elevance, HCSC, Horizon, Kaiser, Molina, Sanford Health Plan, Secure Health, United Healthcare all attended the 2018 Client Advisory Board Meeting alongside Centene.

22.     No antitrust attorneys attended the 2018 Client Advisory Board Meeting, and no antitrust guidance or disclaimers were given in any of the presentations from MultiPlan executives.

23.     Centene encouraged its subsidiary, Health Net of California's, continued participation in the MultiPlan Cartel. A year after Centene attended the 2018 Client Advisory Board Meeting, Health Net of California executives began attending the Client Advisory Board Meetings. Michelle Puente, the Senior Director of Provider Network Management at Health Net, and Derek Smith, a long-time manager at Health Net, attended the 2019 Client Advisory Board Meeting.

24.     Centene's subsidiary, Health Net of California, also reprices a substantial number of claims through MultiPlan's Data iSight algorithm. In the first quarter of 2025 alone, Health Net

of California processed $44.6 million in charges through Data iSight, generating $36.3 million in underpayments.

25.     Centene directed, encouraged, and controlled Health Net of California's participation in the MultiPlan Cartel.  Centene conducted due diligence concerning Health Net's agreements at the time of its acquisition of Health Net and would have been aware that Health Net had an agreement with MultiPlan to utilize MultiPlan's Data iSight algorithm to set prices for out-of-network services.  Centene did not cause Health Net to withdraw from that contract, even after sending a Centene executive to the 2018 Client Advisory Board Meeting.  Instead, Centene doubled down, by allowing Health Net executives to attend the 2019 Client Advisory Board Meeting.

26.     Centene was particularly motivated to keep Health Net in the MultiPlan Cartel.  Most of Centene's business is administering health plans for Medicare and Medicaid patients.  Payments to providers for those plans are predictable and set by government regulation.  The portion of Centene's business where its spending cannot be easily predicted is the out-of-network spending through the Ambetter individual marketplace plans administrated by Health Net of California.  So, Centene has caused Health Net to use MultiPlan's common pricing methodology for out-of-network services to align its payment strategy with that of its competitors in the market for out-of-network services.  Doing this was against Centene's economic self-interest.  Centene would not have lowered its prices for out-of-network services to its current levels absent an agreement to use MultiPlan's pricing methodology because Centene's health plans would have faced provider abrasion. That provider abrasion would have been particularly damaging for Centene because Centene has relatively low exposure to the out-of-network services market and providers could easily stop serving Centene's members, putting the competitive position of

Centene's Ambetter health plans in the separate market for selling health insurance coverage at risk.

27.      Centene dominates the decision-making of Health Net with respect to out-of-network pricing.  As a practical matter, there is little difference between Centene and Health Net when it comes to purchasing out-of-network services. As Larry Talman, the Chief Sales Officer for Large Group Accounts at Health Net, explained in 2016, "In March, Health Net and Centene Corporation *became one company*—making us the 4th largest health insurance company in the U.S." (emphasis added). Centene Corporation adopts codes of conduct, business ethics policies, policies concerning email usage, and reimbursement policies for Health Net and all Centene subsidiaries. In written testimony to the California State Department of Insurance, Centene's CEO explained that as a result of Centene's merger with Health Net, Health Net's claims processing would "transition to Centene systems." Centene routinely selects the members of the board of advisors of Health Net and Centene selected the new CEO of Health Net in 2019. According to reports of examination for insurance commissioners, the corporate records of Health Net are kept at Centene's corporate headquarters. And the current board of Health Net of California contains multiple Centene employees, including Kendra Archer, Centene's VP and Board Secretary; Amy Krause, the VP and Associate General Counsel of Centene; and Tricia Dinkelman, VP of Tax for Centene.

**Johns Hopkins Goes OON With United Causing Further Harm to Johns Hopkins**

28.      On August 25, 2025, United and Johns Hopkins failed to reach agreement on a new in-network contract prior to the expiration of their then-existing in-network agreements. As a result, all Johns Hopkins providers and facilities, with the exception of Johns Hopkins All Children's Hospital, are now out-of-network with United.

29.     Because Johns Hopkins is no longer in-network with United, United began setting prices for out-of-network services rendered to its subscribers at Johns Hopkins facilities and by Johns Hopkins providers using MultiPlan's common pricing methodology on or around August 25, 2025. Indeed, Johns Hopkins has received repricing notification from MultiPlan since August 25, 2025 for OON services provided to patients insured by United.